**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TERRANCE L. WALTERS and NORMA J. WALTERS,

      Plaintiffs,

v.

                                            Case No. 05-CV-70888-DT

MICHAEL O. LEAVITT,

      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S "MOTION TO DISMISS"**

Plaintiffs filed this civil action against Defendant Michael O. Leavitt, the acting Secretary of the Department of Health & Human Services, in his individual and his official capacity. Plaintiffs assert subject matter jurisdiction pursuant to 28 U.S.C. § 1331, averring that this case presents questions "aris[ing] under Title XVIII of the Social Security Act of 1935, Public Law No. 74-271 (49 Stat. 620), being 42 U.S.C. § 1395, *et seq.*, as amended" and under certain Medicare regulations, specifically 42 C.F.R. § 411.37. (Pls.' Compl. at ¶ 2.)

Plaintiffs seek four forms of declaratory or equitable relief against Defendant: (1) a declaratory judgment determining the rights of the parties under certain provisions of the Medicare Act's Secondary Payer ("MSP") provisions, *see* 42 U.S.C. § 1395y(b); (2) a preliminary and permanent injunction compelling Defendant Secretary to produce information, including an itemized list of federal Medicare benefits paid to, or on behalf of, Plaintiffs, including the amount of reimbursement that Defendant will seek; (3) a preliminary and permanent injunction compelling Defendant to "declare upon what

terms a Medicare Set Aside Trust Account for the Plaintiffs shall be deemed sufficient for Defendant's purposes," appointing a trustee for the set aside account, and setting forth a method and procedure for administering the set aside trust account (related to future claims of reimbursement); and (4) an order awarding Plaintiffs their costs and attorney fees.  (*Id.* at 6.)

On May 11, 2005, Defendant filed its "Motion to Dismiss" for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendant argues that the court's jurisdiction to review Plaintiffs' claims is governed exclusively by 42 U.S.C. § 405(h), which provides that: "No action against the United States, the [Secretary] or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."  42 U.S.C. § 405(h).  Defendant maintains that because Plaintiffs have neglected to allege jurisdiction under § 405(h) and because they admittedly have failed to exhaust statutorily required administrative remedies required by § 405(h), the court lacks subject matter jurisdiction.

Plaintiffs filed their response on June 6, 2005, arguing that exhaustion or "administrative channeling" does not apply in this case and federal question subject matter jurisdiction is proper under 28 U.S.C. § 1331.  Defendant filed a reply on June 16, 2005, and the court held oral argument on July 6, 2005.  For the reasons set forth below, the court will grant Defendant's motion and dismiss Plaintiffs' claims without prejudice.

## I.  BACKGROUND

### A.  Factual Background

Plaintiff Terrance L. Walters was severely injured in November 1997 during an accident at a construction site in Monroe County, Michigan.  According to Plaintiffs, a crane operator negligently operated an overhead traveling bridge crane, causing the crane's load line to part.  When the load line parted, a several hundred pound block fell to the ground below, injuring Mr. Walters.  (Pls.' Compl. at ¶¶ 6-7.)  As a result of this accident, Walters sustained a severe head injury and was rendered a quadriplegic.  (*Id.* at ¶ 7.)

After determining that Walters was permanently and totally disabled from gainful employment under Michigan's Workers' Disability Compensation Act of 1969, Mich. Comp. Laws § 418.101, *et seq.*, Liberty Mutual Insurance Company began paying statutory benefits.  (*Id.* at ¶ 8.)  Plaintiff also received additional statutory benefits from Michigan's "Second Injury Fund."  These benefits are paid and administered by the State of Michigan.  *See* Mich. Comp. Laws § 418.501(1), *et seq.*  (*Id.* at ¶ 9.)

Plaintiffs also allege that Mr. Walters was determined to be totally and permanently disabled, becoming eligible for additional benefits under the Social Security Administration and becoming a Medicare recipient, under Title XVIII of the Social Security Act.  (*Id.* at ¶ 10.)  Plaintiffs claim that Walters sought medical care that was conditionally paid for, in whole or at least in part, by Medicare.  (*See id.* at ¶¶ 7, 10, 15.)  The parties do not dispute that some federal benefits were paid by Medicare, and Defendant is named as the individual responsible for the administration and control of these federal benefits that have been, or will be, received in the future.

In December 1997, Plaintiffs, acting pursuant to Mich. Comp. Laws § 418.827(1), filed a civil tort action against certain identified third-party tortfeasors in Monroe County Circuit Court. See *Walters v. Bascon Inc., et al.*, Case No. 97-7441-NO (Dec. 23, 1997). Plaintiffs allege that they have conducted discovery, litigated pretrial claims and defenses, prosecuted liability in preparation for trial, and are close to negotiating a settlement in the state court action.

The rub or impediment, however, comes with regard to certain liens asserted against any proceeds recovered by Plaintiffs in the state court lawsuit, specifically a subrogation lien against settlement proceeds that arises under 42 U.S.C. § 1395y(b)(2)(B)(iii) and 42 C.F.R. § 411.37.

Liberty Mutual Insurance Company and the State of Michigan Second Injury Fund have both asserted subrogation liens for monies paid pursuant to the Michigan Workers' Disability Compensation Act. In addition, the federal government is legally entitled to assert a subrogation lien for the monies paid, or that will be paid, as federal benefits under Medicare's MSP provisions. *See id.* Plaintiffs complain that they are unable to settle their state law tort action without knowing the amount that the federal government will require in reimbursement or the amount to be set aside for future payments. According to Plaintiffs, the Secretary will not provide the information that they seek in this federal civil action.

### B.  The Medicare Secondary Payer Statute

Congress created the Medicare program to pay for medical care of the aged, disabled, and those suffering from end stage renal failure. 42 U.S.C. § 1395, *et seq.*; *Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 908 (6th Cir. 2000) ("Congress

4

established the Medicare program in 1965 as Title XVIII of the Social Security Act in order to provide hospital and medical coverage to most persons over sixty-five years of age and to certain disabled persons.") (citing 42 U.S.C. § 1395c).  The Secretary of Health and Human Services administers the program through the Center for Medicare Services ("CMS").

Prior to 1980, Medicare generally paid for medical services, even when a recipient was also covered by another health plan or insurer.  *Fanning v. United States*, 346 F.3d 386, 388 (3d Cir. 2003) (citing Social Security Amendments of 1965, Pub. L. No. 89-97, § 1862(b), 79 Stat. 286).  In 1980, however, Congress began enacting a series of cost-cutting amendments to the Medicare program, collectively known as the Medicare Secondary Payer, MSP, provisions.  *Id.*; *United States v. Baxter Intern, Inc.*, 345 F.3d 866, 874 (11th Cir. 2003) ("The MSP is actually a collection of statutory provisions codified during the 1980s with the intention of reducing federal health care costs.").

CMS's subrogation rights are defined by the Medicare Act and its interpreting regulations.  Section 1395y(b)(2), part of the MSP statutory provisions, makes Medicare the secondary payer for services provided to beneficiaries whenever payment for these services is available from another primary payer.  *Cochran v. U.S. Health Care Financing Admin.*, 291 F.3d 775, 777 (3d Cir. 2002).  The MSP provisions provide that Medicare will not pay for medical items and services if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or under an automobile or liability policy or plan (including a self-insured plan) or under no fault insurance."  42 U.S.C. § 1395y(b)(2)(A)(ii); *see Cochran,*

291 F.3d at 777 ("[I]f payment for covered services has been or is reasonably expected to be made by someone else, Medicare does not have to pay.").

In order to accommodate Medicare beneficiaries, Congress provided for Medicare to make conditional payments for covered services, when another source may be obligated to pay but that source is not expected to pay promptly. 42 U.S.C. § 1395y(b)(2)(A)(ii); *Cochran*, 291 F.3d at 777. These payments, however, are expressly "conditioned on reimbursement to the appropriate Trust Fund [i.e. to Medicare] . . . ." 42 U.S.C. § 1395y(b)(2)(B)(i). 42 U.S.C. § 1395y(b)(2)(B)(ii) requires a primary plan and entity receiving payment from a primary plan to "reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service."

The *Cochran* court provided the following summary of the MSP and its statutory subrogation rights:

> The way the system is set up the beneficiary gets the health care she needs, but Medicare is entitled to reimbursement if and when the primary payer pays her. Among other avenues of reimbursement, Medicare is subrogated to the beneficiary's right to recover from the primary payer. 42 U.S.C. § 1395y(b)(2)(B)(iii). Medicare regulations extend that subrogation right to any judgments or settlements "related to" injuries for which Medicare paid medical costs, thereby casting the tortfeasor as the primary payer. 42 C.F.R. § 411.37 (2002). Those same regulations also provide that, when Medicare is reimbursed out of a judgment or settlement, the amount of money it takes is reduced by a pro-rata share of the "procurement costs," which include attorney's fees of the judgment or settlement. 42 C.F.R. § 411.37(c) (2002). That is why Medicare asks attorneys handling any related tort suits for its beneficiaries to supply the agency with a copy of the agreement setting out the share of the recovery they are to receive.

*Cochran*, 291 F.3d at 777-78.

6

## II.  STANDARD

It is axiomatic that the court must have subject matter jurisdiction over Plaintiffs' claims and that dismissal under Rule 12(b)(1) is proper if such jurisdiction does not exist.  Federal courts are courts of limited jurisdiction; they exercise only that authority conferred on them by Article III and congressional enactments pursuant thereto. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Additionally, a federal court has an obligation to satisfy itself that it has subject matter jurisdiction and a plaintiff in federal court has the burden of pleading sufficient facts to support the existence of the court's jurisdiction. *Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 177 F.3d 210, 222 n.13 (3d Cir. 1999); *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir. 1997).

When the defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction.  *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir. 1986).  Ordinarily, as in the instant case, challenges to the court's subject matter jurisdiction take the form of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  Challenges to subject matter jurisdiction come in two basic flavors: (1) facial attacks; and (2) factual attacks.  *See, e.g., United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).

> Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks.  A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such a motion, the court must take the material allegations of the petition as true and

> construed in the light most favorable to the nonmoving party. *See Scheuer v. Rhodes,* 416 U.S. 232, 235-37, 94 S. Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974). A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations, *see Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir. 1990), and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. But the fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean that factual findings are therefore binding in future proceedings. *See id.*

*Id.*

In examining whether subject matter jurisdiction exists in a *factual* challenge, the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

### III.  DISCUSSION

The Medicare statute incorporates 42 U.S.C. § 405(h), a Social Security Act provision, through 42 U.S.C. § 1395ii. *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 8-9 (2000) ("Section 1395ii makes § 405(h) applicable 'to the same extent' as it applies to the Social Security Act."). In turn, 42 U.S.C. § 405(h) "channels most, if not all, Medicare claims through [a] special review system" described under 42 U.S.C. § 405(g). *Id.* at 8. Section 405(h) provides:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. *No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.*

42 U.S.C. § 405(h) (emphasis added).

8

The Medicare Act, through 42 U.S.C. § 1395ff(b)(1), also adopts the exhaustion requirement of the Social Security Act set forth at 42 U.S.C. § 405(g).  42 U.S.C. § 1395ff(b)(1); *Cochran*, 291 F.3d at 778-79 ("The Medicare statute requires that any lawsuit which seeks 'to recover on any claim arising under' it must first be brought through the Department of Health and Human Services'[s] administrative appeals process before it can be taken to federal court.").

"Until a claimant has exhausted h[is] administrative remedies by going through the agency appeals process, a federal district court has no subject matter jurisdiction over h[is] lawsuit seeking to 'recover on any claim arising out of' the Medicare Act." *Cochran*, 291 F.3d at 779.  This remains the case, even when the claim includes a challenge to the constitutionality of the statute or its implementing regulations.  *Illinois Council on Long Term Care*, 529 U.S. at 12; *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975).

As plainly expressed by Congress, if Plaintiffs' claims "arise under" the Medicare Act, then the third sentence of § 405(g) precludes this court's jurisdiction under 28 U.S.C. § 1331.  *Fanning*, 346 F.3d at 392 (noting that if complaint arises under Medicare Act, district court lacks jurisdiction unless exhaustion requirement of § 405(g) is met).

A claim "arises under" the Medicare Act, triggering § 405(h) where both the standing and the substantive basis for the presentation of the claim is the Medicare Act.  *Illinois Council on Long Term* Care, 529 U.S. at 11-12; *Heckler v. Ringer*, 466 U.S. 602, 615 (1984); *Weinberger*, 422 U.S. at 760-61; *see also Fanning*, 346 F.3d at 400.

*Illinois Council on Long Term Care* is the Supreme Court's most recent examination of the "arising under" issue. The Court noted that where an individual seeks a monetary benefit from the agency, § 405(h) "plainly bars § 1331 review in such a case, irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds." *Illinois Council on Long Term Care*, 529 U.S. at 10. The question facing the court was whether § 405(h) barred a § 1331 action challenging a rule or regulation brought by individuals "needing advance knowledge for planning purposes." *Id.* at 11.

In *Illinois Council*, an association of nursing homes asserted federal question jurisdiction and sued the Secretary, claiming that certain Medicare regulations violated various statutes and the United States Constitution. The district court dismissed the case for lack of jurisdiction, finding that "a set of special statutory provisions creates a separate, virtually exclusive system of administrative and judicial review for denials of Medicare claims." *Id.* at 5. The district court specifically held that § 405(h) barred the court's jurisdiction over the § 1331 civil action. *Id.* The court of appeals reversed, but the Supreme Court affirmed the district court.

In doing so, the Court explained:

[I]nsofar as [§ 405(h)] demands the "channeling" of virtually all legal attacks through the agency, it assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts applying "ripeness" and "exhaustion" exceptions case by case. But this assurance comes at a price, namely, occasional individual, delay-related hardship. In the context of a massive, complex health and safety program such as Medicare, embodied in hundreds of pages of statutes and thousands of pages of often interrelated regulations, any of which may become the subject of a legal challenge in any of several different courts, paying this price may seem justified. In any event, such was the judgment of Congress as understood in *Salfi* and *Ringer.*

10

> [W]e cannot distinguish *Salfi* and *Ringer* from the case before us. Those cases themselves foreclose distinctions based upon the "potential future" versus the "actual present" nature of the claim, the "general legal" versus the "fact-specific" nature of the challenge, the "collateral" versus "noncollateral" nature of the issues, or the "declaratory" versus "injunctive" nature of the relief sought. Nor can we accept a distinction that limits the scope of § 405(h) to claims for monetary benefits. Claims for money, claims for other benefits, claims of program eligibility, and claims that contest a sanction or remedy may all similarly rest upon individual fact-related circumstances, may all similarly dispute agency policy determinations, or may all similarly involve the application, interpretation, or constitutionality of interrelated regulations or statutory provisions. There is no reason to distinguish among them in terms of the language or in terms of the purposes of § 405(h). Section 1395ii's blanket incorporation of that provision into the Medicare Act as a whole certainly contains no such distinction. Nor for similar reasons can we here limit those provisions to claims that involve "amounts."

*Id.* at 13.

The Court held that § 405(g) contains the "nonwaivable and nonexcusable requirement that an individual present a claim to the agency before raising it in court." *Id.* at 16. The Court, however, noted that its decision in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986) supported one exception to the channeling of claims through the administrative process.

In *Michigan Academy*, an association of family physicians filed a federal civil action challenging a Medicare regulation that authorized payment benefits under Part B of the Act in different amounts for similar services. The district court found the regulation invalid because it violated several provisions of the Medicare Act. The court of appeals affirmed. Both lower courts rejected the Secretary's argument that §§ 1395ff and 1395ii forbid judicial review.

At the time of the litigation, however, the terms of the Medicare Act did not provide any administrative or judicial review for Part B benefit amount determinations;

11

individuals aggrieved under this Part were entitled to a hearing by a *private* carrier, and § 405(h), by its own terms, did not apply to Part B of the Medicare program. *Michigan Academy*, 476 U.S. at 680. There was simply no administrative or judicial review of the claim outside of the private carrier's hearing. Accordingly, the Court in *Michigan Academy* ruled that § 405(h) did not prevent the district court from exercising federal question jurisdiction.

This decision led to what came to be known as the "amount/methodology" distinction," which would permit pre-enforcement challenges to *the method* used to determine Medicare benefits to be brought in federal court without following the requirements in § 405(h). *Fanning*, 346 F.3d at 397 (citing John Aloysius Cogan, Jr. & Rodney A. Johnson, *Administrative Channeling Under the Medicare Act Clarified: Illiniois Council, Section 405(h), and the Application of Congressional Intent*, 9 Annals Health L. 125, 134 (2000)). Four months after the Court decided *Michigan Academy*, however, Congress amended the Medicare Act to authorize administrative and judicial review of Part B benefits determinations. *Id.* "As a result of the amendment, most courts considered *Michigan Academy* a 'dead letter,' and the 'amount/methodology' distinction was deemed to have been extinguished by Congress." *Fanning*, 346 F.3d at 398.

In *Illinois Council* the Supreme Court rejected the "amount/methodology" distinction and clarified its holding in *Michigan Academy*. According to the Court, *Michigan Academy* recognized that § 1395ii does not apply § 405(h) "where application of § 405(h) would not simply channel review through the agency, but [where channeling would] mean no review at all." *Illinois Council on Long Term Care*, 529 U.S. at 19. As

12

such, a plaintiff may avoid § 405(h)'s exhaustion requirement and bring a § 1331 action only where he establishes that no administrative or judicial review is possible. *See Fanning*, 346 F.3d at 400 (plaintiffs would not have to exhaust administrative remedies "if they could show that they have no way of having their claims reviewed").

In the instant case, Plaintiffs do not dispute that they have not sought administrative review of their claims. Rather, Plaintiffs argue that exhaustion is not required because the Defendant Secretary will not make a determination regarding the Secretary's subrogation rights until the Plaintiff's settle their state law tort action against third parties, that the Secretary does not provide information needed to satisfy the discharge of a CMS lien within a reasonable amount of time, and that the Secretary's unreasonable implementation of the regulations creates a structural flaw requiring a delay in the finalization of personal injury claims. Plaintiffs argue that jurisdiction exists pursuant to § 1331 because the exhaustion requirement of § 405(h) applies only to review of benefits determinations and that absent § 1331, they would receive no review at all. They also maintain that exhaustion is not required pursuant to *Day v. Shalala*, 23 F.3d 1052 (6th Cir. 1994).

Defendant argues that there is no "structural flaw" because Subpart C of 42 C.F.R. provides specific rules applying the MSP statute to workers' compensation cases and CMS has made information available to assist in these cases, including a web page. *See* http://www.cms.hhs.gov/medicare/cob/attorneys/att_wc.asp. Defendant contradicts Plaintiff's assertion that the Secretary will not review the claims if presented, arguing that "proposed settlements" are reviewed administratively.

Because Plaintiffs' claims arise under the Medicare Act and are capable of review through the administrative procedures, the court lacks jurisdiction pursuant to § 405(h).  In essence, Plaintiffs are seeking a determination of the amount of reimbursement that Defendant will seek under its subrogation rights created by the Medicare Act's MSP provisions.  Both the standing and the substantive basis for presenting this claim arise under the Medicare Act, triggering § 405(h).

Plaintiffs have made no attempts to exhaust their administrative remedies available under § 405(g).  In addition, Plaintiffs have failed to establish that they have no way of having their claims reviewed.  If properly presented and denied in the agency forum, § 405 would still permit judicial review.  In fact, Defendant states that the very information that Plaintiffs seek would be available to Plaintiffs on administrative review. (Def.'s Reply at 4 ("plaintiffs can obtain precisely the information that they seek by following the Secretary's administrative process").[1]

Other courts examining claims under the MSP have also concluded that § 405(h) applies to bar jurisdiction under § 1331, leaving the complaining parties to their remedies in § 405.  *See Fanning*, 346 F.3d at 399-400 (finding allegations in a class action complaint wholly dependent on definitions of the statute and therefore "arose

---

[1] To support their argument that a "structural flaw" exists, Plaintiffs point to evidence that the Secretary is causing certain workers' compensation insurance carriers to pay additional benefits during unreasonable delays in processing claims.  (*See* Pl.'s Resp. at 5 & Ex. A).  This evidence, however, is simply irrelevant to the claims before the court.  Plaintiffs have not alleged that they have been or will be required to pay more benefits during this delay.  In short, Plaintiffs do not alleged that they are insurers paying more benefits; nor have they asserted any valid basis for standing to assert any claims on behalf of any such insurer involved in this matter.  No workers' compensation insurers have been named in this case.

under" the Medicare Act, triggering § 405(h)'s mandatory exhaustion); *Cochran,* 291 F.3d at 789-90; *Buckner v. Heckler*, 804 F.2d 258 (4th Cir. 1986).

In *Cochran*, the plaintiff, a 70-year-old woman, was injured by an elevator door in a county courthouse and Medicare paid for her medical expenses. *Cochran*, 291 F.3d at 777. The injured woman, like the instant Plaintiffs, brought a state court negligence action against the company responsible for maintaining the elevator causing her injury. The CMC (then known as the Health Care Financing Administration) sent the plaintiff a letter informing her that it was statutorily subrogated to her recovery against the elevator company. *Id.* at 777 & n. 1. After receiving notice of the Medicare subrogation, the plaintiff's attorney put the state law case on hold and filed a declaratory judgment lawsuit in federal court. The plaintiff relied on § 1331 to support subject matter jurisdiction and sought to have the Medicare subrogation statute or its implementing regulations declared unconstitutional. *Id.* at 778. The court dismissed the claim for lack of jurisdiction based on § 405(h). The court held that the plaintiff would first have to exhaust her administrative remedies. It explained:

> [The CMC] has broad discretion to waive the right of subrogation when pursuing it "would defeat the purposes of the Medicare Act or the Social Security Act or would be against equity and good conscience." 42 U.S.C. § 1395gg(c). To exhaust her administrative appeals, Cochran would first have to request that the agency exercise its discretion to waive its right to collect from the proceeds of her tort suit the medical expenses it had paid on her behalf. If [the CMC] denied Cochran's request for a waiver, she would then have to seek review of that denial at a hearing before an administrative law judge, and request review of any unfavorable ALJ decision by the Department of Health and Human Services Appeals Board. 42 C.F.R. §§ 405.720, 405.724. During that process she could raise any constitutional objections she has to HCFA's subrogation practices. *See Illinois Council,* 529 U.S. at 12, 120 S.Ct. at 1093. After Cochran exhausted her remedies through that administrative appeals process, she could bring her claims to federal court. 42 U.S.C. §

15

> 1395ff(b)(1). That assumes, of course, that she would lose administratively.

*Id.* at 779.

Additionally, Plaintiffs cannot rely on *Day v. Shalala*, 23 F.3d 1059-60 (6th Cir. 1994) and their allegation of futility to avoid the statute's exhaustion requirement. In *Day*, the Sixth Circuit applied the three traditional factors to be considered in deciding whether to waive an exhaustion requirement. *See Day*, 23 F.3d at 1059. But, the statute at issue, § 405(h), does more than simply require exhaustion of administrative remedies.

> That the third sentence of § 405(h) is more than a codified requirement of administrative exhaustion is plain from its own language, which is sweeping and direct and which states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted. Moreover, if the third sentence is construed to be nothing more that a requirement of administrative exhaustion, it would be superfluous. This is because the first two sentences of § 405(h) ... assure that administrative exhaustion will be required. Specifically, they prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g). This latter section prescribes typical requirements for review of matters before an administrative agency, including administrative exhaustion. Thus the District Court's treatment of the third sentence of § 405(h) not only ignored that sentence's plain language, but also relegated it to a function which is already performed by other statutory provisions.

*Weinberger*, 422 U.S. at 757-58.

While in some contexts, administrative exhaustion requirements may be tempered by judge-made exceptions, such exceptions do not apply to statutorily-mandated exhaustion requirements. *Cochran*, 291 F.3d at 780. Therefore, the court need not consider Plaintiffs' argument that it has satisfied the traditional three factors warranting an exception to an exhaustion requirement or that some form of initial, limited discovery might reveal a factual basis to support their claim of futility.

16

Plaintiffs' argument that the exhaustion requirement does not apply to this case because "the strictures of § 405(h) are limited in application to review of benefits determination[s]," also fails. As discussed above, the Supreme Court rejected this argument in *Illinois Council on Long Term Care.* 529 U.S. at 14.

Finally, the court finds that discovery related to Defendant's facial and factual attacks on subject matter jurisdiction is not required. It is undisputed that Plaintiffs have failed to exhaust any administrative remedies, and Plaintiffs have not identified a disputed factual issue that would alter the court's jurisdictional conclusion under the statute. Once Plaintiffs satisfy the exhaustion requirement, they will be free to seek judicial review under the terms of § 405. This includes presenting any constitutional or "structural flaw" arguments to the Secretary.

Lastly, during oral argument, Plaintiffs argued that the court should exercise its equitable powers and invoke the All Writs Act to exercise jurisdiction over this case. Appeal to the All Writs Act, however, is not persuasive in this context.

The All Writs Act provides that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Act enables federal courts to issue orders and commands "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. N.Y. Tel.,* 434 U.S. 159, 172 (1977). The Supreme Court has stressed, however, that the All Writs Act does not

17

authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. United States Marshals Serv.,* 474 U.S. 34, 43 (1985).

"Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.*; *see also United States v. Perry*, 360 F.3d 519, 533 (6th Cir. 2004); *Daniels v. United States*, 25 Fed. App'x 355, 356 (6th Cir. 2002) ("The All Writs Act provides the vehicle by which the federal courts may issue writs in exercise of their clearly delineated jurisdiction, but the Act does not amount to an independent jurisdictional grant in the absence of an express statutory grant of subject matter jurisdiction.") (citing *Haggard v. Tenn.*, 421 F.2d 1384, 1386 (6th Cir. 1970)).

As explained above, Congress has spoken clearly on the court's jurisdiction over claims arising under the Medicare Act, and has required exhaustion before a civil action may be brought pursuant to 28 U.S.C. § 1331.[2]

---

[2] In support of his invitation for the court to invoke the All Writs Act, Plaintiffs' counsel directed the court to the recent dissenting opinions by Eleventh Circuit Court of Appeals Judge Gerald B. Tjoflat in the recent, highly publicized Florida litigation involving Terry Schiavo. *See Schiavo ex rel Schindler v. Schiavo*, 404 F.3d 1270 (11th Cir. 2005) (Tjoflat, J., dissenting); *Schiavo ex rel Schindler v. Schiavo*, 403 F.3d 1261 (11th Cir. 2005) (Tjoflat, J. dissenting). Upon reviewing Judge Tjoflat's dissenting opinions, the court notes that Judge Tjofalt advocated for invoking the All Writs Act only *after* he was satisfied that Congress had constitutionally granted jurisdiction to review the claims in the *Schiavo* case. *Schiavo*, 404 F.3d at 1279-81; *Schiavo*, 403 F.3d at 1261. Judge Tjofalt dissented from the Eleventh Circuit's decisions to refuse a rehearing en banc. In his view, the court should have directed the district court to issue an injunction under the All Writs Act to restore Terry Schiavo's feeding tube, otherwise the appeal would become moot, depriving the court of its jurisdiction. Schiavo, 404 F.3d at 1279. Judge Tjoflat's appeal to the All Writs Act in this context was in aid of specific jurisdiction granted by Congress. Here, Plaintiff has failed to demonstrate how the court will lose jurisdiction in the future by adhereing to Congress's command requiring exhaustion under § 405(h).

## IV.  CONCLUSION

IT IS ORDERED that Defendant's "Motion to Dismiss" [Dkt. # 7] is GRANTED and Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE.

                                             S/Robert H. Cleland
                                            ROBERT H. CLELAND
                                            UNITED STATES DISTRICT JUDGE

Dated:  July 14, 2005

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 14, 2005, by electronic and/or ordinary mail.

                                             S/Lisa G. Teets
                                            Case Manager and Deputy Clerk
                                            (313) 234-5522